Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

11 CPUC 2d 692

Re Monitoring of Telephone Conversations

Decision 83-06-021
OII- Rulemaking 103

California Public Utilities Commission

June 1, 1983

ORDER adopting rules and regulations concerning the privacy of telephone communications.

P.U.R. Headnote and Classification
1. SERVICE
s451 - Telephone - Misuse of service - Violation of right to privacy - Telephone monitoring and recording - Revisions to rules and regulations.

Ca.P.U.C. 1983
The commission adopted revisions to its rules and regulations dealing with telephone privacy to accomplish two purposes: (1) to assure privacy on the same basis as it existed prior to the widespread use of independently furnished terminal equipment, and (2) to provide a concise and easy-to-read restatement of previously issued privacy orders, which prohibit, with certain exceptions, the recording (by electronic device) or monitoring of a telephone conversation without notifying the parties to the conversation that the recording or monitoring is taking place.
Re Monitoring of Telephone Conversations

P.U.R. Headnote and Classification
2. SERVICE
s451 - Telephone - Misuse of service - Violation of right to privacy - Telephone monitoring and recording - Jurisdiction.

Ca.P.U.C. 1983
The commission possesses the requisite jurisdictional authority to regulate the monitoring and recording of telephone conversations by persons providing their own terminal equipment where necessary to protect the public's right to privacy; decisions by the Federal Communications Commission and state and federal courts, which ended the terminal equipment monopoly by telephone utilities, were found to have left room for state commissions to formulate reasonable rules and procedures designed to protect the network from misuse by persons providing their own terminal equipment.
Re Monitoring of Telephone Conversations

P.U.R. Headnote and Classification
i. SERVICE
s451 - Telephone - Misuse of service - Violation of right to privacy - Telephone monitoring and recording - Enforcement of rules and regulations.

Ca.P.U.C. 1983
Statement, by commission, that since the California Constitution, Article 1, § 1, protects citizens against unreasonable invasions of privacy, either the commission or telephone utilities under its jurisdiction may take appropriate legal action to assure enforcement of revised rules and regulations concerning the privacy of telephone communications.
Re Monitoring of Telephone Conversations

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

By the COMMISSION:

## OPINION

*Summary*

This decision augments General Order (GO) 107 to assure privacy of telephone conversations over the public utility telephone network regardless of the source or ownership of the terminal equipment. Rules relating to privacy of telecommunications, originally appearing as orders in certain decisions, are restated as part of the revised GO after being redrafted for clarity. In addition, a section is added which *693 requires each telephone utility to file, and maintain on file, a tariff providing that as a condition of use of the public telephone network, monitoring may be conducted only when certain specified forms of notice are given.

*History and Background*

We initiated this rulemaking proceeding because our present orders dealing with telephone privacy did not anticipate legal and other changes which would result in a competitive market in telecommunications terminal equipment rather than monopoly control by telephone utilities.

GO 107 in its original form was issued in 1961 and simply directed telephone utilities to file reports of instances of unlawful wiretapping and to report on steps being taken to assure privacy of conversations.1

Then in an investigation begun in 1965 and reopened in 1967 we issued extensive opinions on the subjects of monitoring and recording (64 CPUC 526; 67 CPUC 528). Our orders in these decisions prohibit recording or monitoring a telephone conversation without notifying the parties to the conversation that the recording or monitoring is taking place.2

Those orders made exceptions in favor of supervisory, administrative, or maintenance monitoring by telephone utilities. In 1976 we modified the provisions dealing with monitoring by maintenance personnel (80 CPUC 621, 627-633). In 1978 we extensively reviewed the subject of supervisory and administrative monitoring. While allowing the exception to the audible warning requirement for supervisory and administrative monitoring to stand, we required telephone companies to print a conspicuous notice in their telephone directories that such monitoring takes place. Our reasons for imposing different notification requirements for telephone utilities are discussed in our opinion on the subject (83 CPUC 149, 155-181).

There the matter rested until the filing of *Air Transport Employees v Pacific Tel. & Tel. Co,* (D.93839, C. 10894, December 15, 1981). Complainant sought relief from supervisory monitoring by Western Airlines, without notice, at its facilities at San Francisco International Airport. Defendant moved to dismiss, pointing out that the complaint itself alleged the terminal equipment was not furnished by defendant, but provided by an independent supplier. We stated:

We believe that the complaint fails to state a cause of action against Pacific. Complainant is essentially using the complaint format to petition the Commission for an investigation.

We agree with Pacific that no acts of Pacific, as distinguished from those of Western, are the subject of the complaint. Western contracted with an independent telecommunications supplier for its equipment. Under current law, Western is entitled to do just this. Pacific has no physical control over Western's equipment past the point of interconnection.

Additionally, as the law and as our general orders are presently constituted, Pacific has no duty to inspect, supervise, or regulate the installation of customer-owned terminal equipment to assure that monitoring is performed only with proper warning to the public.

The complaint was dismissed, but we began this rulemaking proceeding.

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

---

*Telephone Privacy and Public Policy*

*694 At the outset of this opinion it is appropriate to set forth state law as it applies to telephone privacy.

Article I, Section 1 of the California Constitution reads:

All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

It bears emphasis that the word "privacy" was added when the voters approved a redraft of this section in 1974, although pre-1974 cases recognized the right. (*Kerby v Hal Roach Studios* (1942) 53 CA 2d 207; *Gill v Curtis Publishing Co.* (1952) 38 C 2d 273.)

It is clear that the California privacy right is not absolute and exists, like the corresponding federal right, to prevent unreasonable incursions into privacy. (*White v Davis* (1975) 13 C 3d 757, 765; *Armenta v Superior Court* (1976) 61 CA 3d 584; *Loeder v Municipal Court* (1976) 17 C 3d 859; cf. *Roe v Wade* (1972) 410 US 113, 153-154.)

Regarding the subject of this investigation there are specific legislative directions to us. PU Code § 7905 reads:

The Public Utilities Commission shall issue regulations requiring every telephone corporation subject to its jurisdiction to maintain complete records of all instances in which its employees discover any device installed for the purpose of overhearing communications over the lines of such corporation and all instances in which such employees reasonably believe and report to the corporation their belief that such device is installed or has been installed but has since been removed.

In addition, § 7906 states:

The Public Utilities Commission shall regularly make inquiry of every telephone corporation under its jurisdiction to determine whether or not such corporation is taking adequate steps to insure the privacy of communications over such corporation's telephone communication system.

Finally, under § 701 the Commission may supervise and regulate public utilities in the State and may take action "necessary and convenient in the exercise of such power and jurisdiction."

Following the reopening of the investigation on telephone privacy which began in 1965, we issued Decision (D.) 73146 in 1967 (67 CPUC 528). Our key finding on the issue of privacy was:

The privacy desired by a party to a communication can only be determined by giving appropriate notice to such party that the communication is being monitored, recorded, or intercepted. (Finding 13.)

In other words, a person warned can make an informed determination on the extent of the conversation he or she wishes to conduct.

In *Pacific Tel. & Tel. Co.* (1977) 83 CPUC 149, we held that supervisory monitoring between a customer and a telephone company employee, without adequate notice that monitoring could take place, violated federal and state constitutional guarantees (US Constitution, Article IV; California Constitution, Article I).

*695 *The Proposed General Order*

[1] The proposed revision to GO 107 is intended to accomplish two purposes: (1) assuring privacy on the same basis as it existed before the widespread use of independently-furnished terminal (in this case, primarily PBX) equipment; (2) including in the GO a concise and easy-to-read restatement of our privacy orders originally published in our 1965 and 1967 decisions on the subject. We will deal first with the problem of extending our privacy requirements to independently-furnished terminal equipment.

---

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

*Jurisdictional Issues*

[2] Air Transport Association of America (ATA)3 and certain other parties contest our legal authority to engage in this type of regulation. In summary, the arguments are:

1. Our jurisdiction extends to the regulation of telephone utilities and not to the conduct of users of independent terminal equipment. PU Code § 701, for example, gives us supervisory and regulatory control over "every public utility" in the state and nothing beyond that.

2. In association with the previous argument, ATA points out that the monitoring takes place after communication has left the public utility lines.

3. The Commission cannot deal with the problem by assuming that airlines or other organizations are public utilities for jurisdictional purposes. The Commission recognized this in *California Hotel & Motel Assn. v Pacific Tel. & Tel. Co.* (1978) 84 CPUC 352.

4. Reservations are received at a center over a combination of interstate and intrastate private lines. The terminal equipment cannot distinguish interstate calls from intrastate. Since the terminal equipment is thus connected to the national telecommunications network, no state may adopt regulations which substantially encroach upon the federal government's jurisdiction to regulate the national network. (*North Carolina Utilities Comm'n. v FCC* 552 F 2d 1036, cert. den. 434 US 874 (1977).)

5. Our order is preempted by the Airline Deregulation Act of 1978 and by the Railway Labor Act.

6. PU Code § 453 (concerning discriminatory rates) is violated by the proposed rule because it would "discriminate against a subscriber conducting quality control monitoring by placing him in the position of not getting telephone service or losing it if he did not accede to the conditions. (Comments, p. 28.)

7. The Commission cannot deny interconnection unless the use made of the public utility lines is in violation of law. Under §§ 630, 631, and 632 of the Penal Code, various acts including wiretapping are proscribed; monitoring is not.

The short answer to the first three arguments is that the Commission does have jurisdiction to regulate the use of the public utility telephone network in California by subscribers and other callers. We have no jurisdiction, for example, over "intercom" facilities making no use of the network, or over other communications technologies which entirely bypass the network, when they are not themselves dedicated to public use.

*696 ATA claims that we exceed our jurisdiction attempting to regulate the terminal equipment itself - that is, since the monitoring takes place in the terminal equipment and beyond the point of interconnection with the public utility telephone line, we are directly regulating private equipment.

This analysis overlooks several factors, including a basic understanding of electric circuitry. When a telephone connection is established, it is open for communication in either direction between the parties. For all practical purposes the communication is instantaneous and cannot be said to "start" at one end, "go through" the wires, and "come out the other end," any more than electric power transmission may be said to work in such a fashion. Cases cited on water or gas pipes are irrelevant both to the subject of electronics and to privacy.

The proposed GO does not directly regulate terminal equipment, but the use of the public utility communication lines. It prohibits misuse of those lines by the device of connecting terminal equipment to the line which unreasonably invades the privacy of the users of those lines. It has been long recognized that conditions directly affecting the telephone subscriber's use of the public utility telephone network are lawful, so long as the conditions are reasonable. (*Ambassador, Inc. v United States* (1944) 325 US 317, 323, reh. den. 325 US 896.) The leading cases which ended the terminal equipment monopoly of the telephone utilities specifically leave room for the formulation of rules and procedures to protect the network from misuse

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

by persons providing their own terminal equipment. See *Hush-A-Phone Corp. v FCC*, 238 F 2d 266 (D.C. Cir. 1956); *Carter v American Tel. & Tel. Co.* (1968) 13 FCC 2d 420 and *Phonetele, Inc. v PUC* (1974) 11 Cal 3d 125, 113 CR 16.4

Nor is it precedential at this time for this Commission to impose conditions which regulate the use of terminal equipment by customers. Our orders on monitoring date from 1967. We have also placed strict conditions on the use of automatic dialing-announcing equipment (*Co.* (1978) 83 CPUC 744). These restrictions are clearly aimed at the customers possessing and using such equipment, not at the telephone utilities, and are for the purpose of protecting other telephone users. We formerly required, by way of conditions in telephone utility tariffs, that a showing be made prior to increasing telephone surcharges imposed by hotels and motels for the use of room telephones. This mode of regulation was discontinued not because of jurisdictional questions but because it proved unworkable. (*California Hotel and Motel Assn. v Pacific Tel. & Tel. Co.* (1978) 84 CPUC 352.) Other examples of tariff provisions regulating use of the network by the customer could be cited.

ATA's analysis would lead to an eventual end to any regulation of the caller's or subscriber's use of the telephone network, either for privacy considerations or other legitimate concerns. Because of the decision in *United States v American Tel. & Tel. Co.* et al.5 and the FCC's orders in the proceeding generally referred to as *Second Computer Inquiry*,6 virtually all telecommunications terminal equipment will, in the future, be offered on an untariffed basis by organizations independent of the local operating telephone utilities. Neither legal precedent nor common sense compels us to abandon our regulatory role over the use of the telephone network by subscribers and other parties to communications over it, and we decline to so abandon our legitimate responsibilities.

*697 We have also examined the various federal preemption arguments and find no conflict between the state regulatory scheme of telephone utilities and any federal law or constitutional provision.

It is argued that the federal courts have ruled that the FCC has preempted regulation of all interconnection which accesses the interstate network, and that since there is no such thing as a separate intrastate network, we may not act as we propose. In this regard ATA points out that airlines currently set up reservation centers which handle multi-state territories. (See *Telerent Leasing Corp.* (1974) 45 FCC 2d 204, aff'd sub nom. *North Carolina Util. Comm. v FCC* 537 F 2d 787, cert. den. (1976) 429 US 1076, and also *North Carolina Util. Comm. v FCC* (1977) 552 F 2d 1036, cert den. (1977) 434 US 874.) The cases cited concern a state's attempt to regulate intrastate interconnection in such a manner that the FCC's rules on customer-provided equipment would be circumvented. Here we have no such conflict because there is no FCC regulation on monitoring. Thus we may act to regulate monitoring when the connection monitored makes use of the dedicated public utility telephone network in California, and when the point at which monitoring occurs is within the state.7

Nor does either a rational interpretation of the Commerce Clause of the U.S. Constitution (Art. 1 § b, clause 3) or a review of the history of airline regulation support ATA's theory of absolute federal preemption in this area. The U.S. Supreme Court has recently summarized the test for determining whether a statute passes muster under the Commerce Clause as follows:

...(1) whether the challenged statute regulates evenhandedly with only "incidental" effects on interstate commerce or discriminates against interstate commerce either on its face or in practical effect; (2) whether the statute serves a legitimate local purpose, and if so (3) whether alternative means could promote this local purpose as well without discriminating against interstate commerce.

(*Hughes v Oklahoma* (1979) 441 US 322, 336.) Our revised GO meets this standard. Privacy is its subject, and that subject and its provisions serve a legitimate purpose under state law, do not discriminate against interstate commerce, and, assuming arguendo that there is any effect on interstate commerce at all, it is incidental.

Furthermore, a review of the history of airline regulation supports this view. The Airline Deregulation Act of 1978 concerns airline routes, rates, and services, and was enacted to amend a 1958 act on the same subject, the essential thrust of both acts being the economic regulation of interstate air transportation. Nothing in the 1978 Act can sensibly be construed as barring any and all state regulation of interstate airline carriers, at least when such regulation is aimed at business and industry generally. Almost any state law (payment of state taxes or requiring workers compensation for employees, for example) may be said to have some consequential effect on "services"; thus under ATA's view, Congress would have erected an absolute bar against enforcing state laws generally affecting business against interstate airlines.8 In our opinion, such a construction is unreasonable.

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

Similarly, the argument that the subject of this proceeding is a "labor dispute", and therefore is preempted by the Railway Labor Act, fails. Not every disagreement between an employer and an employee is a "labor dispute", and the state is not preempted *698 from regulating an activity which is "a merely peripheral concern" of federal labor or which "touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling Congressional direction, we could not infer that Congress has deprived the States of the power to act." (*San Diego Building Trades v Garmon* (1959) 359 US 236, 243-244; cf. *Farmer v Carpenters Local 25* (1977) 430 US 290.)

The purpose of the proposed GO is to protect the privacy of members of the public who use the public utility telephone lines. It only consequentially deals with disagreements between employees, who presumably prefer no monitoring, and employers, who presumably prefer monitoring without notice.9 Nor, in any event, are employees prevented from seeking stricter monitoring rules via the collective bargaining process.

Finally, we may summarily dispose of certain arguments based on California statutes.

PU Code § 453, concerning preferential or discriminatory treatment, is not violated by the proposed GO. All users of monitoring equipment are treated alike. In fact, a consequential effect of the GO may be said to be the removal of unintended discrimination against those business customers which continue to lease their monitoring equipment from the utility. In any event, other PU Code provisions, previously discussed, specifically charge the Commission the Commission with certain duties regarding telecommunications privacy.

Penal Code §§ 630 et seq. concern the specific subject of illegal wiretapping. These sections do not remove the Commission's jurisdiction to require tariff filings on the part of telephone utilities which control disconnection of service for other reasons.

Other particular points raised regarding the Commission's jurisdiction have been examined and do not require separate discussion.

*Exceptions in Favor of Certain Business*

Some respondents argue (on their own behalf or on behalf of their clients) that airlines or energy utilities should be excepted from the GO's monitoring requirements.

Allowing such exceptions will lead to a general breakdown of the rule, since many other companies or industries have equally valid claims about the need for quality control. If the Commission is forced to a case-by-case analysis of which company or which industry should be exempted, it is very likely that eventual problems of discrimination under PU Code § 453 will be encountered.

While because of what we deem to be the less personal nature of calls to telephone utilities we have not required beep-tone warnings for them, even here we have required warnings in directories. (See discussion, 83 CPUC 149, 155-181.)

*Enforcement Problems*

Telephone utility respondents argue against adoption of the beep-tone requirement on the basis that there are legal and practical problems in enforcing it. They question whether there exists any legal basis under which they may gain entry to inspect independently installed telephone equipment if it is refused. It is pointed out that while telephone service may be disconnected by a utility (subject to legal safeguards; see *Sokol v Public Util. Comm.* (1966) 65 Cal 2d 247, and *Golden v Public Util. Comm.* (1979) 23 Cal 3d 638), monitoring *699 is lawful, unlike wiretapping and certain classifications of conduct covered by Penal Code §§ 630 et seq. Therefore, there is no basis for obtaining a search warrant.

One telephone company respondent would solve this problem by introducing a complaint procedure. We cannot enlarge the

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

statutory scope of complaints before the Commission by administrative action. The first sentence of PU Code § 1702 reads:

Complaint may be made by the Commission of its own motion or by any corporation or person, chamber of commerce, board of trade, labor organization, or any civic, commercial, mercantile, traffic, agricultural, or manufacturing association or organization, or any body politic or municipal corporation, by written petition or complaint, setting forth any act or thing done or omitted to be done *by any public utility,* including any rule or charge heretofore established or fixed by or for any public utility, in violation or claimed to be in violation, of any provision of law or of any order or rule of the commission. (Emphasis added.)

While there is virtually no restriction upon who may be a complainant, a public utility must be a defendant. The scheme proposed, allowing a public utility to complain against a customer allegedly engaged in improper monitoring, cannot stand under the language of this code section. (*National Communication Center v Pacific Tel. & Tel. Co.* (1979) 2 CPUC 2d 533, 540-541; see discussion of *Air Transport Employees* complaint, above.)

However, there is nothing in the relevant statutes which would prohibit a third party which suspects undisclosed monitoring from asking the utility to intercede with the allegedly monitoring party on its behalf. If that intercession fails to resolve the problem, the third party could bring a formal complaint against the utility, alleging failure to enforce a tariff provision. Evidence in support of the complaint could include that of the aggrieved party as well as obtaining testimony under subpoena of those who are allegedly monitoring without disclosure through one of the means required by the tariff as a condition of service.

Upon proof, the Commission's remedy would be to order the defendant utility to discontinue service to the offending subscriber.

We do not agree with certain parties filing comments that the administrative burden imposed is too great. For many years, telephone utilities have had certain responsibilities concerning unlawful use of telephone lines. Litigation, some of it extensive, has resulted. (See *Sokol v PUC,* and *Goldin v PUC,* supra, concerning disconnections resulting from the offering of illegal services by telephone, and *San Mateo United School District v Pacific Tel. & Tel. Co.* (1971) 72 CPUC 776, re termination of service for unlawfully recording telephone conversations.) However, history of these problems convinces us that the volume of litigation is low, and there is no reason to believe that imposing our new monitoring rule will increase it.

*Technical Comments*10

Section II.A. of the proposed GO defines lawful monitoring and then lists certain exclusions such as wiretapping (Penal Code § 631) and eavesdropping (Penal Code § 362). General Telephone Co. of California (General) recommends that the exception in subsection b. of Section *700 E include additional language, as underlined:

Monitoring by law enforcement or national defense agencies, or by telephone utilities to prevent fraud or loss of revenues *or to identify the source of lewd or harassing calls,* when these activities are permitted under enabling laws and legal safeguards: ...

No party objects to this addition, and it should have been included to comport with state law.

General also notes that Section II.A.4.a. does not recognize that there are certain conditions involving law enforcement (criminal use of the telephone system) where prior consent to monitor is not required. It wants subsection a. changed so that the rule will state that the public utility telephone network may not be used for monitoring or recording except when:

a. All parties to the conversation give their express prior consent to the monitoring or recording, *except when otherwise provided in the law...*

This is an unnecessary addition because there is already an exception for this purpose in Section II.A.1.b. which allows monitoring by law enforcement or national defense agencies "when permitted under enabling laws and legal safeguards".

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

General next comments (see Section II.A.5.b.):

...General suggests that certain language in Decision 73146 which has been carried forward for many years be deleted. The proposed section refers to marking telephone instruments from which communications may be monitored "or otherwise intercepted." The term monitoring has been clearly defined ... and is all inclusive. Therefore, the quoted language is either redundant or ambiguous.

Rather than revising the requirement, we believe the subsection should be deleted because it is redundant as to the tone warning portion of the language, and, as a practical matter, unenforceable regarding "marking each telephone instrument" in an era in which there are numerous sources for telephones. The remaining parts of Section 6 cover the methods of notice of monitoring adequately.

General also suggests the addition of "or recording" after the word "monitoring" in Section B to be consistent with GO's purpose. This will be done.

Finally, General and some other parties would delete Section II.B.3., which requires customers to allow reasonable access for inspection by telephone utilities to assure monitoring is conducted under approved procedures. The enforcement difficulties under this language are discussed elsewhere in this opinion. We have conceded they exist, although we do not believe that the volume of complaints will be great enough to cause a major problem. This language is necessary to enforce the GO, and we decline to delete it.

The Pacific Telephone and Telegraph Co. (Pacific) suggests deletion of a reference to two of our decisions in Section II.A. According to Pacific, this reference is unnecessary to the rest of the section and may cause confusion because different parties have interpreted these decisions differently in the past. It will be stricken.

Pacific also comments that Section II.A.2. appears broader than previous Commission rulings and instead of defining "recording" as "the recording or transcribing of any telephone conversation by any means", we should state that it is *701 "electronic recording of any telephone conversation." We note that Penal Code § 631 is directed against recording of a "confidential communication" (i.e., one which circumstances indicate as intended to be private) "by means of any amplifying or recording device." It is not the purpose of that section to forbid writing down parts of the conversation. Our proposed language ("by any means") could be construed to forbid writing or note-taking. We will revise the paragraph to read: "'Recording' means the recording of any telephone conversation by means of any electronic device."

*Findings of Fact*

1. Our present GO 107 was adopted, among other purposes, to regulate monitoring and recording of telephone conversations. GO 107 in its present form precedes various court and regulatory decisions which ended the telephone utility monopoly on the furnishing of telecommunications terminal equipment.

2. The purposes of revised GO 107, appended in its original form to the OII which began this proceeding, are:

a. To add language declaratory of the Commission's policy on recording and monitoring of telephone conversations, and

b. To extend existing monitoring safeguards to monitoring or recording by using customer-owned terminal equipment when a conversation using such equipment also travels over the public utility telephone network under our jurisdiction.

3. It is in the public interest to maintain the same degree of privacy for persons using the public utility telephone network as existed before terminal equipment was available from non-utility sources.

4. The Commission recognizes the value of employee training through unannounced monitoring but believes (as it did when it held extensive hearings on the subject in 1965 and 1967, see 64 CPUC 526 and 67 CPUC 528) that such considerations are outweighed by the need for providing members of the public with a reasonable degree of privacy from such monitoring by persons or organizations other than (under certain conditions) telephone utilities. (80 CPUC 621, 627-633; 83 CPUC 149,

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

155-181.)

5. Revised GO 107, attached to this decision as Appendix A (which includes changes discussed in the opinion section of this decision) is reasonable, and should be adopted to replace the existing GO 107.

*Conclusions of Law*

[i] 1. This Commission has the jurisdiction to adopt the revised GO 107.

2. Since California Constitution, Article I, Section 1, protects citizens against unreasonable invasions of privacy, either this Commission or telephone utilities under its jurisdiction may take appropriate legal action to assure enforcement of the revised GO 107.

### ORDER

IT IS ORDERED that:

1. On the effective date of this decision, General Order 107-B, attached to this decision as Appendix A, is adopted in place of General Order 107-A.

2. Proceedings are terminated.

This order becomes effective 30 days from today.

Dated June 1, 1983, at San Francisco, California.

*702 VICTOR CALVOPRISCILLA C. GREWDONALD VIALCommissioners
I will file a written dissent.
Leonard M. Grimes, Jr.
Commissioner

### APPENDIX A

### General Order 107-B

(Supersedes General Order 107-A)

PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA RULES AND REGULATIONS CONCERNING THE PRIVACY OF TELEPHONE COMMUNICATIONS.

Adopted July 1, 1983. Effective July, 1, 1983.

Decision 83-06-021. OII - Rulemaking 103.

1. REQUIRED RECORDS (Public Utilities Code §§ 7905 and 7906)

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

A. Each telephone corporation subject to the jurisdiction of the Commission shall maintain complete records of all instances in which employees discover any devices installed for the purpose of overhearing communications over the lines of such corporation and all instances in which employees reasonably believe and report to the corporation that a device is installed or has been installed but has since been removed.

Each such telephone corporation shall file with the Commission on or before the 31st day of March each year one copy of a report of all instances in which its employees discover any devices installed for the purpose of overhearing communications over the lines of the corporation and all instances in which employees reasonably believe and report to the corporation that a device is installed or has been installed but has since been removed. This report shall cover the immediately preceding calendar year and shall include the date, name of subscriber, telephone number, location of service, nature of case, description of the device, circumstance of discovery and designation of lines involved in each discovery of these devices, by whom reported, action taken, and disposition of the case. The reports will be labeled "confidential" and will be so treated by the Commission as to details the disclosure of which, in the Commission's opinion, would be adverse to the public interest.

B. Each telephone corporation subject to the jurisdiction of the Commission shall maintain a central file available for Commission inspection of all instructions to employees, regulations, rules and forms designed to ensure the privacy and/or maintain the secrecy of communications over the lines of the corporation together with a record of the steps taken to ensure the privacy of and/or secrecy of communications.

C. Each telephone corporation shall file with the Commission on or before the 31st day of March of each year one copy of a statement showing any changing in the steps being taken to ensure privacy of and/or secrecy of communications together with one copy of any new or revised instructions, regulations, rules and/or forms being used.

D. Each telephone corporation which does not have instances during the year under *703 Section A above and/or changes under Section C above shall file with the Commission on or before the 31st day of March each year one copy of a statement indicating it has no instances or changes during the year.

II. REGULATIONS GOVERNING MONITORING AND RECORDING

A. Monitoring or recording of telephone conversations shall not be conducted except pursuant to this General Order.

1. "Monitoring" means the use of monitoring equipment to allow a third person to overhear the telephone conversation of two or more persons. Monitoring does not include:

a. Unlawful wiretapping or eavesdropping;

b. Monitoring by law enforcement or national defense agencies, when the activity is permitted under enabling laws and legal safeguards, or by telephone utilities as provided by law to prevent fraud or loss of revenues, or to identify the source of lewd of harassing calls;

c. Accidental or unintentional interception of telephone conversations by telephone utility personnel engaged in normal operation, maintenance, or construction;

d. "Administrative monitoring" or "Service observing" performed by telephone utilities for training and quality control purposes, when performed as authorized by our decisions.

2. "Recording" means the recording or transcribing of any telephone conversation by means of any electronic device.

3."Monitoring equipment" means any method or apparatus by which a public utility telephone corporation or a telephone subscriber, or any of their officers, employees, or agents, may listen to or record telephone conversations on premises owned or controlled by the utility or by the subscriber:

a. Without any audible indication to the parties conversing that their conversation is being overheard, or

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

b. Without connection of a device to provide two-way conversation between the listener and the parties conversing so that the listener's voice may be heard throughout any period of monitoring, or

c. Without any indication to the parties conversing that their conversation is being recorded.

4. No portion of the public utility telephone network in California to which the public, or any portion of the public, has access shall be used for the purpose of transmitting any telephone conversation which is being monitored or recorded except when:

a. All the parties to the conversation give their express prior consent to the monitoring or recording, or

b. When notice that such monitoring *704 or recording is taking place is given to the parties to the conversation by one of the methods required in this order.

5. Notice of recording shall be given either:

a. By an automatic tone warning device which shall automatically produce the distinct tone warning signal known as a "beep tone" which is audible to all parties to a communication and which is repeated at regular intervals during the course of the communication whenever the communication is being recorded; or

b. By clearly, prominently and permanently marking each telephone instrument for company use from which communications may be recorded to indicate that a communication of the user of the instrument may be recorded without notice; provided that this method of giving notice of recording may be used only if the automatic tone warning signal is audible to all parties to the communication using telephone instruments not so marked.

6. Notice of monitoring shall be given either:

a. By a tone warning device which automatically produces a distinct signal audible to all parties to a telephone conversation. The signal shall have those characteristics specified by the Federal Communications Commission, or by this order; or

b. By verbal announcement by the operator of monitoring equipment to the parties to a communication that their communication is being monitored; or

c. By a telephone instrument transmitter which is operationally connected to the communication circuit being monitored and which acoustically, mechanically, electrically or otherwise has not been designed, modified, desensitized or located with the intent of eliminating notice or monitoring or interception, with the exception that minimization of transmission losses will be permitted.

7. The tone warning signal referred to in the preceding sections shall have the following characteristics:

| | |
|---|---|
| Number of tones | 1 |
| Length of each tone | 20/100 of a second, plus or minus 20% |
| Pitch of tone | 1,400 cycles per second, plus or minus 10% |
| Frequency of recurrence of each signal | not less than 12 seconds |

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

Level of tone .................................................................................. and not more than 18 seconds

equal to the average telephone talking signal strength

8. Each California public utility telephone corporation which offers monitoring or recording equipment to its customers shall file and maintain on file, with this Commission a tariff setting forth the requirements and restrictions for the use of this equipment.

9. All California telephone directories *705 issued by, or under the authority of, any public utility telephone corporation shall include a description and statement of the significance of tone warning signals and marking or telephone instruments.

B. In order to assure the same degree of privacy for telephone conversations conducted over the California lines of telephone utilities interconnected with terminal equipment provided by customers of telephone utilities, each telephone utility shall file, and maintain on file, with this Commission a tariff which provides as conditions of use of the telephone network:

1. That any customer in California which provides its own terminal equipment and which monitors or records conversations between its employees and its customers, and others engaging in conversations with its employees, shall notify the telephone utility in writing of such monitoring or recording;

2. That these customers shall provide notice of the monitoring or recording by use of one of the methods authorized for equipment provided by the telephone utility; and

3. That customers using their own terminal equipment shall allow reasonable access for inspection by personnel of the telephone corporation to assure that monitoring or recording is being conducted by approved procedures.

Approved and dated June 1, 1983, at San Francisco, California.

PUBLIC UTILITIES COMMISSIONSTATE OF CALIFORNIABy Joseph E. BodovitzExecutive Director

(END OF APPENDIX A)

COMMISSIONER LEONARD M. GRIMES, JR., Dissenting:

I dissent. Like the majority, I strongly believe that a person's right to privacy is of great importance and should be protected whenever possible. However, in my opinion the provisions of GO 107 B cannot be enforced against an uncooperative person or organization conducting monitoring without notice. If the Commission maintains a pretense that the public is protected, telephone users are lulled into a somnolent sense of false security concerning the privacy of telephone conversations.

Suppose information is brought to the Commission's attention that a telephone user is monitoring conversations without the notice prescribed in GO 107 B. Suppose further that inspection of the premises is refused. Assuming the Commission wishes to take legal action in this situation, how does it proceed? When the telephone utilities had a monopoly over terminal equipment, they could enter a premises to inspect their own equipment, or upon refusal, suspend service. What right do the utilities have to enter a premises to inspect independently-owned equipment to determine that monitoring without notice is taking place by use of the independent equipment? I am convinced that there is no such enforceable right under current

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

California law.

Without such entry right, how do we decide whether monitoring without notice is taking place? Assuming that we can entertain a complaint on the subject, the *706 evidence will consist simply of one person's word against another. If we find that there is a violation and order it terminated we are "back to square one" because we may not inspect the premises to ensure compliance. And, if voluntary inspection is permitted, a recalcitrant party can simply "wait 'til the whole thing blows over" and re-install the offending equipment.

Added to the above problems are two additional considerations.

The first is whether either this Commission's staff or the employees of the utilities should be engaged in the investigatory work necessary to deal with such complaints (absent legislative direction on the subject).

The second factor - and in my opinion a major problem - is the changing nature of our national telecommunications network. An increasing amount of telephone traffic is carried by microwave, cellular, and other forms of wireless technology. Neither this Commission nor any telephone utility can assure that no one is overhearing such traffic. Thus, as time goes by (and it goes by very quickly in telecommunications) our order will become increasingly meaningless.

The majority of the Commissioners expressed their desire to hold the line, so to speak, until the Legislature acts to strengthen our hand. If that is their desire, it would be better to concede, quite frankly, that we currently have nothing to work with that will serve our purpose, thus squarely and immediately presenting the Legislature with the issue: either outlaw monitoring without notice or give this Commission some other statutory framework under which to operate.

For reasons stated, I would adopt the alternate draft. Pending any legislation, the public receives at least some protection by way of a mandatory educational program which will assure some knowledge of monitoring practices on the telephone user's part. And if the Legislature believes that no change in the law is desirable, we are at least educating, rather than fooling, the public.

LEONARD M. GRIMES, JR., COMMISSIONER
San Francisco, California
June 1, 1983

## FOOTNOTES

Footnotes

1    Cf. Public Utilities (PU) Code §§ 7905 and 7906, enacted in 1957, discussed infra.

2    Certain exceptions exist relating to law enforcement, and the orders do not cover problems of illegal wiretapping or eavesdropping, which are the subject of Penal Code § 631. That section covers "taps" and "unauthorized connections."

3    ATA's members include the trunk carriers operation in the United States, as well as the large intrastate airlines. See ATA's comments, footnote 1.

4    The FCC's Docket 19528 simply expanded the FCC's customer-provided equipment registration program. In response to the FCC's Third Report and Order, we suspended our own registration program.

5    Civil Nos. 74-1698 et al., U.S. District Court for the District of Columbia; see Court's opinion filed August 11, 1982.

    FN6 Docket 20828, 77 FCC 2d 384 (1980), modified 84 FCC 2d 50 (1980) and 88 FCC 2d 512 (1981).

7    Cf. cases in which state anti-wiretapping statutes have been found lawful against challenges based on claimed federal preemption. (*People v Conklin* (1974) 12 Cal 3d 359, 114 Cal Rptr 251; appeal dismissed for want of substantial federal question, 419 US 1064; and *People v Broady* (1957) 5 NY 2d 500; 74 ALR 2d 841; See anno. following at 74 ALR 2d 855.)

Re Monitoring of Telephone Conversations, 11 CPUC 2d 692 (1983)

8   Assuming such action on the part of Congress, query whether it could survive a challenge based on the 10th Amendment to the U.S. Constitution. Since we believe ATA's argument is without merit, an analysis of this point is unnecessary.

9   As is readily apparent from the predictable comments of parties representing employers or employees.

10  In addition to some changes made pursuant to comments of the parties, the format has been modernized to eliminate repetitive language. This resulted in changing the letters of some of the subsections. References are to the sections or paragraphs as renumbered or relettered.

End of Document                                         © 2013 Thomson Reuters. No claim to original U.S. Government Works.