# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Justin Maghen, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Quicken Loans Inc.,<br><br>　　　　　Defendant. | Case No. CV 14-03840-DMG (FFMx)<br><br>**ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

　　　The matter before the Court is Defendant Quicken Loans Inc.' motion for summary judgment, filed on March 27, 2015. [Doc. # 35.] Plaintiff Justin Maghen filed an opposition on April 3, 2015. [Doc. # 43.] Quicken filed a reply on April 10, 2015. [Doc. # 45.] A hearing on the motion is scheduled for April 24, 2015.

　　　Having duly considered the parties' written submissions, the Court now renders its decision.

# I.

# FACTUAL AND PROCEDURAL BACKGROUND

The Court sets forth the uncontroverted material facts below, and views all reasonable inferences to be drawn from them in the light most favorable to Maghen, the non-moving party.[1]

On February 4, 2014, Maghen submitted an online form to Lending Tree LLC requesting information about refinancing a property. (*See* Declaration of Katherine Baird ("Baird Decl.") ¶¶ 2-3 [Doc # 35-1]; Declaration of James Snell ("Snell Decl.") ¶ 4, Ex. 3 (Maghen Depo. at 10:21-11:9) [Doc # 35-17].) This online submission required Maghen to agree to Lending Tree's Terms of Use. (*See* Baird Decl. ¶ 3.) The Terms of Use state, in relevant part:

> By submitting your contact request for a loan product, you are consenting to be contacted by one or more lenders which may include any one of our over 200 Network lenders . . . who may [contact you] either by telephone **(on a recorded line)**, email or mail. . . .  In addition, you are consenting, acknowledging, and agreeing to Lending Tree LLC and the applicable Lenders Terms of Use and Privacy Policy.

(*See* Baird Decl. ¶ 3, Exh. 2 ("Lending Tree's Terms of Use") at 5 [Doc. # 35-3] (emphasis added).) It is undisputed that Maghen agreed to these terms. (*See* Plaintiff's Statement of Genuine Dispute ("P's SGD") ¶ 1.)

---

[1] Quicken requests judicial notice of 13 exhibits submitted in support of summary judgment. (Defendant's Request for Judicial Notice ("RJN") [Doc # 36].) Exhibits 1 through 8 are references to the legislative history of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.* Because they meet the requirements of Fed. R. Evid. 201, the Court takes judicial notice of them. *See Lee v. City of Los Angeles*, 250 F. 3d 668, 690 (9th Cir. 2001) (citing Fed. R. Evid. 201(b)). The relevance of Exhibits 9 through 11 is unclear because Quicken does not provide an argument relying on them in either its request for judicial notice or its motion for summary judgment. Thus, the Court declines to take judicial notice of them. Finally, Exhibits 12 and 13 consist of Maghen's complaints from previous cases alleging violations of CIPA. While the Court may take judicial notice of complaints and briefs filed in another case to determine what issues were before that court, the Court does not rely on them in deciding this motion. Accordingly, Quicken's request for judicial notice is **GRANTED** with respect to Exhibits 1 through 8 and is otherwise **DENIED**.

In response to Maghen's request for refinancing information, Quicken, a Lending Tree network provider, sent an email to the email address Maghen provided shortly before it called him. (*See* Declaration of Kevin Lang ("Lang Decl.") ¶ 5.) The email contained a disclosure that Maghen's calls with Quicken would be recorded. (*See* Lang Decl. ¶ 5, Exh. 3 ("Email from Quicken to Maghen") ("To ensure we give you the best client service, *we record and monitor your communications with us*. This includes communications made by telephone, e-mail, chat, our website, etc.") (emphasis added).)

Quicken's representative John Siira[2] then called Maghen and confirmed that Maghen was the party who requested information.

Siira:     [] I'm calling from Quicken Loans. . . . I'm calling with that official mortgage review for the refinance you were looking into online.

Maghen:     Yes.

                      \*                \*                \*

Siira:     Ok, no problem. . . . Just to let you know, *all of our calls are recorded for quality assurance*. . . .

Maghen:     Okay.

(*See* Snell Decl. ¶ 3, Exh. 2 (Transcript at 2:8-14, 3:8-18) (emphasis added) [Doc. # 35-16].) At his deposition, Maghen confirmed he understood this meant that Quicken recorded its calls for quality assurance. (*See* Snell Decl. ¶ 4, Exh. 3 (Maghen Depo. at 21:7-12).)

Right after Maghen said, "Okay," the call was disconnected, but the parties were reconnected somewhere between seconds and a "couple [of] minutes" after the interruption in service. (*See* Snell Decl. ¶ 4, Exh. 3 (Maghen Depo. at 23:13).) After the call disconnected, Siira called Maghen again. (*See* Snell Decl. ¶ 3, Exh. 2

---

[2] Maghen disputes this fact and contends that Siira is an employee of Blue Point. (*See* Maghen's Statement of Genuine Dispute ("P's SGD") ¶ 10.) Blue Point is a team within Quicken Loans that calls individuals who request information about refinancing. (*See* Declaration of Kevin Lambard ("Lambard Decl.") ¶ 4 [Doc. #35-9].) Maghen has not cited to evidence creating a genuine issue of material fact as to whether Siira was a Quicken representative.

(Transcript at 3:20-24).) Siira did not inform Maghen again that the call would be recorded. (*See* Snell Decl. ¶ 3, Exh. 2 (Transcript at 3-4).) In the course of the call, Siira transferred the call to Kevin Lambard, a specialist in California refinancing. (*See* Snell Decl. ¶ 3, Exh. 2 (Transcript at 4:6-9).) Lambard also confirmed he worked for Quicken. (*See* Snell Decl. ¶ 3, Exh. 2 (Transcript at 4:13-14).) Siira then disconnected from the call, and Maghen began discussing his property with Lambard. (*See* Snell Decl. ¶ 3, Exh. 2 (Transcript at 8:14-9:13).)

After discussing the details of the proposed refinance for an indeterminate amount of time, Maghen asked whether the calls with Lambard were being recorded. (*See* Snell Decl. ¶ 3, Exh. 2 (Transcript at 9:14-17).) When Lambard confirmed that the calls were recorded, Maghen stated, "I'm just not comfortable in moving forward," and terminated the call. (*See* Snell Decl. ¶ 3, Exh. 2 (Transcript at 10:3-9).)

On May 19, 2014, Maghen filed a class action lawsuit against Quicken for damages and injunctive relief under Cal. Penal Code § 632.7. [Doc. # 1.]

## II.
## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met its initial burden, Rule

56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

## III.
## DISCUSSION

### A. Maghen Consented to Quicken's Call

Quicken moves for summary judgment on Maghen's claim on the grounds that (1) Maghen consented to the call and (2) Quicken's service-observing recordings are exempt from the statute at issue, Cal. Penal Code § 632.7. Section 632.7 states, in relevant part:

> Every person who, *without the consent of all parties to a communication*, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished[.]

Cal. Penal Code § 632.7(a) (emphasis added). As such, consent is a complete defense to a Section 632.7 claim.

Here, Maghen consented to the recording of his calls. Specifically, Maghen consented to the recordings by (1) agreeing to the Terms of Use on Lending Tree's

website when he requested information about refinancing; and (2) agreeing at the outset of the call that the call could be recorded for quality control purposes.

With respect to Maghen's agreement to Lending Tree's Terms of Use, Maghen does not dispute that he agreed to these terms.[3] Instead, Maghen argues that his acceptance of terms and conditions is irrelevant because, according to Maghen, consumers must be warned at the outset of each call recording. (Opp'n at 7.) Although a warning at the outset of a conversation is sufficient to comply with Section 632.7, it is not necessary to do so in every circumstance. *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 118, 45 Cal. Rptr. 3d 730 (2006) (noting that "[a] business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call *would not violate the provision*" but not holding that such advisement is required to the exclusion of all other forms of notification). To adopt such a requirement based on the language of *Kearney* would be to impose a much more restrictive standard than that required on the face of Section 632.7. *See White*, 2013 WL 756292, at *17 (noting that the court's language in *Kearney* is followed by a footnote detailing other circumstances in which Section 632 liability may be avoided, and declining to create "a verbal disclosure requirement that is not expressly provided by the statute itself"). Thus, a warning at the outset of the call is not required to comply with Section 632.7, if consent to a recording already has been given prior to the call. Maghen's agreement to Lending Tree's Terms of Use is sufficient to establish consent.

---

[3] Maghen argues that Lending Tree's Terms of Use are vague and ambiguous because the agreement does not list Quicken or any of its other 200 providers. In a similar situation, the court in *White v. FIA Card Servs.*, *N.A.* held that an agreement that simply referred to the defendant's "affiliates, or its marketing associates" to have sufficiently disclosed that telephone calls with the defendant would be recorded. No. 12-CV-2034-AJB, 2013 WL 756292, at *14-15 (S.D. Cal. Feb. 26, 2013). Moreover, at the beginning of the call, Quicken referred to Maghen's online request for information about refinancing, and Maghen responded in a manner that indicated that he remembered the request. (*See* Snell Decl. ¶ 3, Exh. 2 (Transcript at 2:2-14).) Thus, at least on the facts in this case, Maghen's argument that he did not connect his agreement to Lending Tree's Terms of Use and Quicken's phone call is unavailing.

Even if a verbal warning at the outset of the call were required, however, the uncontroverted facts show that Quicken provided such a warning and gained Maghen's consent to the recording. Maghen argues, without citing to any authority, that Quicken failed to provide a warning "at the outset" of the call because Siira did not provide a warning again upon reconnecting with Maghen after their call was inexplicably disconnected. (*See* Opp'n at 5.) A business satisfies Section 632.7, however, by warning a party at the outset of a "conversation." *Kearney*, 39 Cal. 4th at 118. Here, the brief time it took to reconnect after the call was disconnected strongly militates in favor of viewing the entirety of the party's exchanges in this case as one "conversation" despite the momentary interruption in telephone service. Moreover, Maghen's argument is particularly unavailing in light of the fact that Lending Tree, in its Terms of Use Agreement, and Quicken, in its email to Maghen just prior to the call, had warned Maghen that *all* of his calls with Quicken would be recorded. Given those repeated warnings and Maghen's express consent at the outset of the first call, a reasonable factfinder could not find that Quicken failed to obtain consent to record the conversation simply because the parties were briefly disconnected.

The same reasoning is applicable to Maghen's argument that the transfer of the call to another one of Quicken's specialists negated his consent. Both of the individuals Maghen spoke with identified themselves as Quicken Loans employees, and Maghen received notification at the outset of the conversation that Quicken was recording before the call was transferred internally. Any expectation that the call would not be recorded because the call was transferred to a different Quicken Loans employee is unreasonable. Nor can Maghen's belated change of heart, if it can be characterized as such,[4] about allowing his calls to be recorded towards the end of the

---

[4] Maghen's assertion towards the end of the call that he was "not comfortable in moving forward," while not material to the outcome of this motion, could also be construed as an expression of disinterest in proceeding with a refinance with Quicken.

1  conversation negate the consent that he had already given prior to the point when he
2  terminated the call.
3        In sum, it is uncontroverted that Maghen consented to the recording of the call
4  when he agreed to Lending Tree's Terms of Use Agreement and when he said "Okay"
5  in response to Quicken's explanation that the call would be recorded at the outset of the
6  conversation. Thus, Quicken did not violate Section 632.7. Because the motion can be
7  resolved on this basis, the Court need not reach Quicken's argument that summary
8  judgment should be granted on Maghen's claim because its "service-observing calls"
9  are exempt from CIPA.
10       Accordingly, Quicken's motion for summary judgment on Maghen's sole claim
11 under Cal. Penal Code § 632.7 is **GRANTED**.
12 **B.**    **Quicken's Counterclaim for Declaratory Relief**
13       Quicken seeks summary judgment on its counterclaim for declaratory relief that
14 its "service-observing calls" are exempt from CIPA. Quicken bases its argument on
15 Section 632.7(b)(2), which states that the section does not apply to "[t]he use of any
16 instrument, equipment, facility, or service furnished and used pursuant to the tariffs of
17 the public utility." Quicken relies on CIPA's legislative history to demonstrate that the
18 California legislature intended to exempt all "service-observing" telephonic recordings
19 under CIPA. Specifically, Quicken points to a statement made by Jesse Unruh, the
20 author of CIPA, explaining that "telephone subscribers are excluded from coverage
21 with respect to their use of 'service-observing equipment,' but only with approval of
22 the Public Utilities Commission." (*See* RJN, Exh. 2, at 15.) Quicken contends that the
23 exception as worded made sense in 1967, at a time when companies obtained recording
24 equipment from a public utility phone company, but cheap recording technology,
25 available from private parties, has now created a "latent ambiguity" in CIPA. As such,
26 Quicken asserts that all "service-observing" recordings are exempt under CIPA.
27       "A latent ambiguity exists where some extrinsic evidence creates a *necessity* for
28 interpretation or a choice among two or more *possible meanings*." *Coburn v. Sievert*,

8

1  133 Cal. App. 4th 1483, 1495, 35 Cal. Rptr. 3d 596, 603 (2005) (emphasis in original).
2  Such a necessity exists where a literal construction would frustrate rather than promote
3  the purpose of the statute or would produce absurd consequences. *Id.* Quicken
4  contends that "latent ambiguity" means that, even when the language is unambiguous,
5  one can look to legislative history to introduce the ambiguity. But the cases that
6  Quicken cites do not stand for that proposition. In *Coburn*, for example, the parties had
7  already posited two competing explanations of the phrase "the provisions of Section
8  5152" in the statute. *Id.* at 1498. The court subsequently looked first to the plain
9  meaning of "provisions" for guidance and then to legislative history when the plain
10 meaning of "provisions" did not aid in interpretation. *Id.* at 1499. Similarly, in *Mosk v.*
11 *Superior Court*, the parties disagreed on whether the words "providing for
12 confidentiality" merely delegated to the Judicial Council the power to establish rules
13 for confidentiality of proceedings or allowed for the Judicial Council also to exercise its
14 discretion to provide exceptions to the confidentiality of proceedings. 25 Cal.3d 474,
15 494, 159 Cal. Rptr. 494 (1979). The "latent ambiguity" in the provision thus identified,
16 the court then turned to legislative history to help interpret the provision. *Id.* at 495. In
17 *McVeigh v. Does 1 through 3*, the court cites to legislative history only to bolster its
18 finding that it need not disregard the words of the statute to advance the purposes of the
19 statute. 138 Cal. App. 4th 898, 903, 42 Cal. Rptr. 3d 91, 94 (2006). Likewise, in
20 *Coalition of Concerned Communities, Inc. v. City of Los Angeles*, the parties identified
21 an ambiguity in the term "housing development" without resort to legislative history.
22 34 Cal. 4th 733, 737, 21 Cal. Rptr. 3d 676 (2004). Only then did the Court examine
23 legislative history to resolve the ambiguity. *Id.* at 738. None of these cases rely on
24 legislative history to introduce an ambiguity in an otherwise unambiguous statutory
25 provision, which Quicken contends a court should then resolve by looking at that same
26 legislative history.

27  Quicken has failed to identify any ambiguity in the plain text of Section
28 632.7(b)(2) that would make recourse to legislative history proper. *See NEI*

*Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 3:12-CV-01685-BAS, 2015 WL 1346110, at *5 (S.D. Cal. Mar. 24, 2015) (finding that Section 632.7 is unambiguous and that it does not contain a broad exception for service monitoring) (collecting cases); *cf. Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (in the context of construing the Telephone Consumer Protection Act, the court noted that "The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (internal quotation marks omitted).

Moreover, courts have expressly rejected the argument that a "servicing-observing" exception exists within the plain language of CIPA. *See Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1391, 133 Cal. Rptr. 3d 450, 458 (2011) ("[CIPA] contains no exceptions applicable when a business monitors a telephone conversation even if the monitoring is for a legitimate business purpose."); *see also Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1008 (C.D. Cal. Sept. 8, 2014) (finding that Section 632.7 unambiguously "does not contain a broad exception for routine service monitoring"); *Zephyr v. Saxon Mortg. Serv.'s, Inc.*, 873 F. Supp. 2d 1223, 1231 (E.D. Cal. 2012) (explaining a "business telephone monitoring" exception would be contrary to the express language of Sections 632 and 632.7); *NEI Contracting*, 2015 WL 1346110, at *6 (declining to read a "service observing" exemption into Section 632.7); *Bales v. Sierra Trading Post*, No. 13-cv-1894, 2013 WL 6244529, at *4 (S.D. Cal. Dec. 3, 2013) (declining to read a "service observing" exception into Section 632 for quality assurance purposes).

Quicken cites to the dissenting opinion in *Young v. Hilton Worldwide, Inc.*, 565 F. App'x 595, 597 (9th Cir. 2014), in support of its contention that "[t]he legislative history of this exception shows that its intended effect was to exclude so-called 'service-observing' calls from the coverage of CIPA." The court in *Ades*, however, considered and expressly disapproved this dissent, noting that, "[a]lthough supportive

of [the defendant's] position, this dissenting opinion . . . does not persuade the Court to ignore the weight of authority on this point." 46 F. Supp. 3d at 1007. Given the absence of ambiguity in the plain language of the statute and the weight of the case authority contrary to Quicken's position, this Court also declines to read a "service-observing" exception into Section 632.7. The more appropriate recourse for Quicken would be to seek clarifying language from the California legislature.

Accordingly, Quicken's motion for summary judgment as to its counterclaim is **DENIED**.

## V.
## CONCLUSION

In light of the foregoing, Quicken's motion for summary judgment is **GRANTED** as to the sole claim in the Complaint and **DENIED** as to Quicken's counterclaim against Maghen. Parties shall meet and confer and lodge a proposed judgment by **May 6, 2015**.

**IT IS SO ORDERED.**

DATED: April 27, 2015

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE